**Affirmed and Memorandum Opinion filed April 18, 2023.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00485-CR

---

**HECTOR ARTURO CAMPOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1538401**

---

### MEMORANDUM OPINION

A jury convicted appellant Hector Arturo Campos of murder and assessed punishment at 45 years. *See* Tex. Penal Code Ann. §§ 12.32, 19.02(b)(1). In two issues on appeal, appellant argues (1) the evidence was legally insufficient for the jury to reject his claim of self-defense and (2) the evidence was legally and factually insufficient to support the jury's negative finding on his sudden-passion claim. We affirm.

# I. BACKGROUND

Appellant was charged with the murder of his neighbor, Ana Weed. At trial, appellant testified that he and his wife used to be good friends with the Weeds. However, appellant claims that Ana helped his wife and daughter travel to Mexico without his consent; appellant's wife and daughter never returned to him, and his wife subsequently filed for divorce. After that, the friendship between appellant and Ana deteriorated. According to appellant, the Weeds knew his sleep schedule and would make banging sounds on his window while he was sleeping. He also alleges that the Weeds would frequently harass and threaten him.

Appellant testified that on the alleged date of the offense, he was washing his brother's truck in his driveway. Ana was allegedly on his property, staring at him in a hostile manner, and trying to get his attention. Appellant tried to speak to her in a "calm, peaceful voice," but Ana allegedly retorted, "Get the f—k away from me. You're about to get f—d up." Ana then allegedly whistled for her dogs, who began barking and attempting to bite appellant.

After the dogs approached, appellant testified that Ana charged him and shoved him backwards. Appellant claims that after being shoved, his glasses were skewed and he had difficulty seeing. He claimed he was afraid of the dogs biting his face, and he could see the anger and hatred in Ana's face. He also claimed that Ana raised her hands at him, and that as she raised her arms, he could tell Ana was holding something shiny in a rigid manner, but he could not identify the object. Because he feared Ana would kill him, he fired his gun and shot her in the chest from approximately 2-3 feet away.

Travis Hoppas described the confrontation differently. Hoppas was visiting his parents' house, who live across the street from appellant and the Weeds. At the time of the incident, Hoppas was in his driveway building a kitchen item. Hoppas

2

testified that appellant and Weed were initially walking near their own respective vehicles. The next time Hoppas looked up, he noticed Ana was bent at a 90-degree angle, backing towards her garage and holding onto her dog's collar while appellant was at the edge of the property line. Ana's dog got loose and charged at appellant; appellant attempted to kick the dog, but missed, fell down, and his shoe was flung into the street. According to Hoppas, Weed threw the packing tape she was holding at appellant and told him not to kick her dog. She then retrieved her dog from appellant's property and began retreating to her garage. Hoppas testified that as she was backing away, appellant said something and then shot her. Hoppas grabbed his own pistol and told appellant to drop his gun; appellant did not drop his gun, but instead told Hoppas to call 9-1-1 and then entered his home.

Upon hearing the gunshot, Scott Weed—Ana's husband—rushed outside. Scott testified that he asked appellant why he shot Ana and that appellant responded, "Because Ana helped [my] wife escape." The medical examiner labeled Ana's death a homicide, but conceded that the bullet's trajectory was not consistent with Ana having been crouched at the time she was shot. The medical examiner also noted that Ana had 83 nanograms of Adderall in her body at the time of her death.

The jury charge included instructions on apparent danger and self-defense. The jury returned a verdict of guilty. At the punishment phase, the trial instructed the jury on sudden passion, but the jury assessed punishment at 45 years. Appellant filed a timely notice of appeal.

## II.    ANALYSIS

### A.    Self-defense

In his first issue, appellant challenges the jury's implicit rejection of his

3

self-defense issue.

### 1.     Standard of review and applicable law

The due-process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally-sufficient evidence. *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018); *see also Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Specific to self-defense, the court of criminal appeals has explained that the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton*, 569 S.W.3d at 608. We do not to whether the State presented evidence that refuted appellant's self-defense evidence, but to whether after viewing all the evidence in the light most favorable to the prosecution, any rational fact-finder would have found the essential elements of murder beyond a reasonable doubt and would have found against appellant on the self-defense issue beyond a reasonable doubt. *Id.* at 609 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

The reviewing court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *See Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899–900.

Self-defense is a fact issue to be determined by the jury and the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14.

A person generally is justified in using deadly force against another in self-defense if, among other things, that person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code Ann. §§ 9.31, .32.

### 2. The evidence was legally sufficient to support jury's rejection of appellant's self-defense claim

Appellant argues the evidence was legally insufficient to support a finding against him on the self-defense issue. However, according to Hoppas, Ana only went on appellant's property to retrieve her dog. Hoppas testified that he never saw Ana shove appellant, but he did see her throw packing tape at him. Hoppas also recalled that Ana was backing away from appellant when he shot her. The jury was free to believe Hoppas and disbelieve appellant. *Saxton*, 804 S.W.2d at 913–14.

The only testimony presented to support appellant's theory of self-defense was his own testimony, but the record reflects that appellant's testimony varied regarding the incident. At trial, he alleged that he shot Ana because she had her hands raised and he saw an unidentified item shine in her hands. But shortly after the shooting, he gave a different version of events to the homicide detectives that interviewed him: "[I] saw [Ana] had a length of, uh [unintelligible] tape, and she motioned like she was going to wrap it around my throat."

Given the evidence presented, the jury—as the sole judge of the credibility of the witnesses—could have found that appellant was not credible. *See id.* And thus, the jury could have concluded that Ana was not attempting to use unlawfully deadly force, appellant's use of deadly force was not immediately necessary,

and/or appellant's belief that the force was necessary was not a reasonable belief under the circumstances.

Reviewing the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt and could have found against appellant's self-defense claim beyond a reasonable doubt. We overrule appellant's first issue.

## B.    Sudden passion

In his second issue, appellant challenges the jury's negative finding on the issue of sudden passion during the punishment phase.

### 1.    Standard of review and applicable law

At the punishment phase of a murder trial, a defendant may reduce a murder charge from a first-degree felony to a second-degree felony by proving by a preponderance of the evidence that "he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d). "Sudden passion" and "adequate cause" are both defined terms:

> (1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

> (2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

Tex. Penal Code Ann. § 19.02(a)(1), (2).

A jury's rejection of sudden passion is reviewable for both legal and factual sufficiency. *See Rankin v. State*, 617 S.W.3d 169, 184–85 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). In reviewing the legal sufficiency of an issue on which

6

the defendant has the burden of proof by a preponderance of the evidence, such as sudden passion, we do not apply the typical *Jackson v. Virginia* standard; instead, we apply the legal-sufficiency standard used in civil cases. *See Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013). First, we review the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary. *Id.* Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the affirmative defense. *Id.* at 669–70. We must defer to the fact-finder's determination of the weight and credibility to give the testimony and the evidence at trial. *Id.*

In reviewing the factual sufficiency of an issue on which the defendant has the burden of proof by a preponderance of the evidence, such as sudden passion, "an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Matlock*, 392 S.W.3d at 671. An appellate court will only sustain a factual sufficiency challenge in this scenario if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

### 2. The evidence was legally sufficient and not factually insufficient to support the jury's rejection of appellant's sudden-passion issue

Appellant relies on his version of events to support his contention that he shot Ana out of sudden passion caused by her provocations. However, the record does not reflect that Ana's actions would "commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1). Hoppas testified that even though the situation seemed tense, appellant and Ana did not

seem to be yelling or even talking loudly because he could not fully understand what they were saying from across the street. Although appellant claims that Ana was approaching him with hands raised and an unknown item in her hands, Hoppas testified that Ana was backing towards her own garage and that the item in her hand was packing tape, which she had already thrown at appellant.

Furthermore, in describing appellant's demeanor after he shot Ana, Hoppas described appellant's expression as "blank." Hoppas had instructed appellant to drop his weapon, but appellant simply told Hoppas to call 9-1-1, and then turned around and walked into his home. It is also of note that appellant's character witnesses described him as someone who "never gets upset," never makes "hasty decisions," and is always "reserved, laid back," and "calm."

The record satisfies the first prong of civil legal-sufficiency standard of review because evidence exists that appellant was not under the immediate influence of sudden passion when he shot Ana. *See Rankin*, 617 S.W.3d at 185. Thus, we need not address the second prong of the civil legal-sufficiency standard—whether appellant proved sudden passion—because that prong only applies if no evidence supports the jury's finding. *See id.*

We further conclude—upon considering all the evidence in a neutral light— that the jury's negative finding on sudden passion was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Matlock*, 392 S.W.3d at 671. The only evidence supporting appellant's claim of sudden passion is his own testimony. Deferring to the jury's determinations of the weight and credibility of the testimony suggesting that Ana's actions would not have caused appellant to experience such a degree of terror such as to render him incapable of cool reflection, and the testimony asserting that appellant appeared emotionally "blank" after shooting Ana, we conclude the evidence is not factually

insufficient to support the jury's negative finding on sudden passion.

We overrule appellant's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.

/s/ Charles A. Spain
Justice

Panel consists of Justices Jewell, Spain, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).